## HOOVER v. SALLING.

(Circuit Court, W. D. Wisconsin. June 29, 1900.)

Public Lands—Entry of Timber Claim—Application—Personal Examination of Land by Applicant Necessary.

Under 20 Stat. 89, §§ 2, 3, requiring the applicant for the purchase of timber lands to make affidavit that the land is unfit for cultivation and valuable chiefly for timber, the applicant must have personally examined the land, so as to be able to make said affidavit from his personal knowledge.

Sanborn, Luse & Ellis, for complainant.
Lamoreux & Shea, for defendant.

BUNN, District Judge. The complainant brings her action to recover 160 acres of land from the defendant, by a bill of complaint as follows:

"Stella W. Hoover, residing at Iron River, Bayfield county, Wisconsin, and a citizen of the state of Wisconsin, brings this her bill of complaint against Ernest N. Salling, residing at Manistee, Michigan, and who is a citizen of the state of Michigan, and thereupon your orator complains and says: That the matter in controversy in this suit exceeds the sum or value of two thousand dollars, exclusive of interest and costs. That on the 13th day of April, 1894, your orator was and still is a citizen of the United States, and a resident of the town of Iron River, in said county of Bayfield, and that the lands hereinafter described then were surveyed public lands of the United States, not included within any military, Indian, or other reservation of the United States, and were and still are chiefly valuable for timber, and which had not and have not been offered at public sale according to the statutes of the United States, and that the same did not then and do not now constitute any mining claim under said laws, and did not and do not include the improvements of any bona fide settler, and did not then and do not now contain any gold, silver, cinnabar, copper, or coal, and were not and had not been selected by any state under any law of the United States donating lands for internal improvements, education, or other purposes, and that the said lands were then proper to be entered as public lands under the provisions of the act of congress of June 3, 1878, as amended by the act of congress of August 4, 1892. That on said 13th day of April, 1894, your orator, being then so entitled to enter said lands as aforesaid, duly filed with the register of the land district at Ashland, Wisconsin (being the land district in which the said lands then were and still are), a written statement in duplicate designating by legal subdivision the particular tract of land which she desired to purchase under the provisions of said act, correctly describing it as the south half of the northeast quarter of section five, township forty-eight north, of range seven west, in said county of Bayfield, and stating and setting forth in said application that she desired to purchase said tract of land; also, that the same was unfit for cultivation, and was chiefly valuable for its timber; that it was uninhabited; that it contained no mining or other improvements, and that, as deponent verily believes, it did not contain any valuable deposit of gold, silver, cinnabar, copper, or coal; that the plaintiff had made no other application under the said act; that she did not apply to purchase the same on speculation, but in good faith and to appropriate it to her own exclusive use and benefit; and that she had not directly

or indirectly made any agreement or contract, in any way or manner, with any person or persons whatsoever, by which the title which she might acquire from the government of the United States should inure in whole or in part to the benefit of any person except herself,—which said application or statement was duly verified by the oath of the said applicant before the register of the said land office within the said district where the said lands were situated, and that all the statements and allegations of the said application were and are true. That upon the filing of said statement as provided in the said act the said register posted a notice of such application, embracing a description of the land by legal subdivision, as so described in said application, in his office, for a period of sixty days, and at the same time furnished to the plaintiff a copy of the same, which was published in a newspaper published nearest the location of the said premises for a like period of sixty days. That, after the said application of your orator was so made, one James Toole made an application under the said acts of congress to enter the said lands, and thereafter, and before the expiration of said period of sixty days, the said Toole, for a valuable consideration to him paid by your orator, duly relinquished in writing all his claim in or to the said land, and duly filed with said relinquishment in the said land office of the United States at Ashland aforesaid. That after the expiration of said period of sixty days your orator appeared at said land office and submitted her proof under the said application, and requested that her claim be allowed, and then and there offered to the land officer to pay for the same the price provided for in said acts of congress. On said day the said James Toole filed a protest against the application and entry of your orator, alleging that she had never been upon or seen the said land or any part thereof at the time she made her application, and that he, the said Toole, had filed an application under the said act of congress to enter the said land. That on said day your orator furnished to the said register of the land office satisfactory evidence that the notice of said application prepared by said register of the land office was duly published in said paper as required by said act of congress, and that the said land was of the character contemplated in the said act, was unoccupied and without improvement, and that it contained no valuable deposit of gold, silver, cinnabar, copper, or coal. That such proceedings were thereafter had in the said land office and in the general land office of the United States in the matter of the said application and entry of said land that the land officers of the United States erroneously and unlawfully held and decided that your orator was not entitled to enter the said land under the said acts of congress, for the reason that it was held that she had not, before making her application, made a personal examination of the said land, and that she did not offer to pay for the said land with her own money, but obtained said money from her husband. Your orator submits that the said rulings and decisions were erroneous and void, for the reason that your orator was and is a qualified entryman under the said acts of congress, and that no rule of said department could make it incumbent upon her to visit the said lands before making her application, and that it was entirely irrelevant to the said inquiry in the said land office whether the money offered to be paid by your orator was her own money, or belonged to her husband or some other person. That thereafter, and on the 23d day of January, 1897, the said officers of the United States duly issued to the said James Toole a certificate of the purchase of the said lands under the said act, and also issued to him a patent therefor, to the manifest prejudice and injury of your orator, which said patent was dated on the 6th day of April, 1897. That thereafter, and on or about the 5th day of November, 1898, by deed executed on that day the said James Toole and his wife sold and conveyed the legal title to said lands to one James Maloney, and that the said Maloney at the time of taking said deed had full notice and knowledge of the right and interest of your orator in said lands, and was not a purchaser thereof for value. That thereafter, and on the 7th day of November, 1898, by the deed executed on that day the said James Maloney and his wife sold and conveyed to the defendant the legal title to the lands herein described, and that said defendant at the time of making said purchase had full notice and knowledge of the right and interest of your orator in the said lands, and is not a bona fide purchaser thereof for value."

To this complaint the defendant put in a general demurrer.

The complainant by her said bill thus challenges the regulation of the land department requiring proof of a personal examination of the land under the act in question, and the question submitted is whether such regulations are reasonable and valid in law. Sections 2 and 3 of the act (see 20 Stat. 89) provide as follows:

"Sec. 2. That any person desiring to avail himself of the provisions of this act shall file with the register of the proper district a written statement in duplicate, one of which is to be transmitted to the general land office, designating by legal subdivisions the particular tract of land he desires to purchase, setting forth that the same is unfit for cultivation, and valuable chiefly for its timber or stone; that it is uninhabited; contains no mining or other improvements, except for ditch or canal purposes, where any such do exist, save such as were made by or belong to the applicant, nor, as deponent verily believes, any valuable deposit of gold, silver, cinnabar, copper, or coal; that deponent has made no other application under this act; that he does not apply to purchase the same on speculation, but in good faith to appropriate it to his own exclusive use and benefit; and that he has not, directly or indirectly, made any agreement or contract, in any way or manner, with any person or persons whatsoever, by which the title which he might acquire from the government of the United States should inure, in whole or in part, to the benefit of any person except himself; which statement must be verified by the oath of the applicant before the register or the receiver of the land office within the district where the land is situated; and if any person taking such oath shall swear falsely in the premises, he shall be subject to all the pains and penalties of perjury, and shall forfeit the money which he may have paid for said lands, and all right and title to the same; and any grant or conveyance which he may have made, except in the hands of bona fide purchasers, shall be null and void.

"Sec. 3. That upon the filing of said statement, as provided in the second section of this act, the register of the land office shall post a notice of such application, embracing a description of the land by legal subdivisions, in his office, for a period of sixty days, and shall furnish the applicant a copy of the same for publication, at the expense of such applicant, in a newspaper published nearest the location of the premises, for a like period of time; and after the expiration of said sixty days, if no adverse claim shall have been filed, the person desiring to purchase shall furnish to the register of the land office satisfactory evidence, first, that said notice of the application prepared by the register as aforesaid was duly published in a newspaper as herein required; secondly, that the land is of the character contemplated in this act, unoccupied and without improvements other than those excepted, either mining or agricultural, and that it apparently contains no valuable deposits of gold, silver, cinnabar, copper, or coal; and upon payment to the proper officer of the purchase money of said land, together with the fees of the register and the receiver, as provided for in case of mining claims in the twelfth section of the act approved May tenth, eighteen hundred and seventy-two, the applicant may be permitted to enter said tract, and, on the transmission to the general land office of the papers and testimony in the case, a patent shall issue thereon: provided, that any person having a valid claim to any portion of the land may object, in writing, to the issuance of a patent to lands so held by him, stating the nature of his claim thereto; and evidence shall be taken, and the merits of said objection shall be determined by the officers of the land office, subject to appeal, as in other land cases. Effect shall be given to the foregoing provisions of this act by regulations to be prescribed by the commissioner of the general land office."

The benefits of this statute were afterwards, by act of congress of August 4, 1892 (chapter 375, 27 Stat. 348), extended to all "public land states." Pursuant to the above provision contained in section 3, the commissioner of the general land office prescribed certain regulations, which, so far as is known or suggested, have never been,

until this suit was begun, challenged or in any way brought in question. The construction given to this law by the land department of the government is shown by the regulations made after its passage in 1887 by Commissioner Sparks, contained in volume 6 of the Decisions of the Department of the Interior, relating to public lands (pages 114, 115, 116). Subdivisions 6, 7, 8, and 11 are as follows:

"(6) A person applying to purchase a tract under the provisions of this act is required to make affidavit before the register or receiver that he has made no prior application under this act; that he is by birth or naturalization a citizen of the United States, or has declared his intention to become a citizen. If native born, parol evidence to that fact will be sufficient. If not native born, record evidence of the prescribed qualification must be furnished. The affidavit must designate by legal subdivisions the tract which the applicant desires to purchase, setting forth its character as above: stating that the same is unfit for cultivation, and valuable chiefly for its timber or stone; that it is uninhabited; contains no mining or other improvements, except for ditch or canal purposes, if any exist, save such as were made by or belong to the applicant, nor, as deponent verily believes, any valuable deposit of gold, silver, cinnabar, copper, or coal; that deponent does not apply to purchase the same on speculation, but in good faith to appropriate it to his own exclusive use and benefit; that he has not, directly or indirectly, made any agreement or contract, in any way or manner, with any person or persons whomsoever, by which the title he may acquire from the government of the United States shall inure in whole or in part to the benefit of any person except himself. (7) Every person swearing falsely to any such affidavit is guilty of perjury, and will be punished as provided by law for such offense. In addition thereto, the money that may be paid for the land is forfeited, and all conveyances of the land or of any right, title, or claim thereto, are absolutely null and void as against the United States. (8) The sworn statement before the register and receiver required as above (section 2 of the act) must be made upon the personal knowledge of applicant, except in the particulars in which the statute provides that the affidavit may be made upon information and belief." "(11) The evidence to be furnished to the satisfaction of the register and receiver at time of entry, as required by the third section of the act, must be taken before the register or receiver, and will consist of the testimony of claimant, corroborated by the testimony of two disinterested witnesses. The testimony will be reduced to writing by you upon the blanks provided for the purpose, after verbally propounding the questions set forth in the printed forms. You will test the accuracy of affiant's information, and the bona fides of the entry, by close and sufficient oral examination. * * *"

By the form prescribed for the applicant's sworn and final statement, on page 117, he is required to swear that he has personally examined the land, and from his personal knowledge states that it is unfit for cultivation and valuable chiefly for its timber; that it is uninhabited; that it contains no mining or other improvements, nor, as he verily believes, any valuable deposit of gold, silver, cinnabar, copper, or coal. Appended to those regulations is a statement signed by Mr. Lamar, secretary of the interior, dated July 16, 1887, to the effect that a strict compliance with them is required. These regulations show the contemporaneous construction which was placed upon the act by the land department after its passage. Upon full consideration of the language of the act, I cannot say that such a construction is not reasonable. The act specifies in terms wherein the sworn application may be made upon belief. From this circumstance alone it may be inferred that in all other respects the oath should be made from personal examination and knowledge. It was wholly reasonable and proper that in regard to mineral deposits,

which would be under the ground, the oath might be upon belief, but as to whether the land was timber land and unfit for cultivation, or farm land and adapted to farming purposes, could be told from personal inspection and knowledge. Considering the terms and purposes of the statute, it can hardly be presumed that a person residing in Maine or Florida, a thousand miles away, should be allowed to enter land in Wisconsin under the timber act by taking an oath as to the situation and character of the land upon information and belief, without any personal knowledge of the fact. Again, the act provides that, if any person taking the oath shall swear falsely in the premises, he shall be subject to all the pains and penalties of perjury. This, also, would point to the same construction, as it is hardly possible to punish for perjury upon an affidavit made on information and belief. A contemporaneous construction placed upon the act by the land department, whose business it was to administer the law, and acquiesced in for 13 years, should certainly have great weight with the court, and should not be disregarded, and patents of land by the government set aside, except for the strongest reasons and upon clear and palpable grounds. Orchard v. Alexander, 157 U. S. 372, 15 Sup. Ct. 635, 39 L. Ed. 737; Caha v. U. S., 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415; 5 Land Dec. Dep. Int. 483. Upon the whole, therefore, I am of opinion that the regulations of the land commissioner under the statute in question are reasonable, and fairly calculated and intended to carry into effect the intent and meaning of the act of congress. The demurrer to the bill of complaint will be sustained, and the bill dismissed.